IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**RONALD L. COSNER,**

      **Plaintiff,**

v.                                                                                     **Case No. 2:18-cv-01499**

**DR. THISTLETHWAITE,** *et al.***,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are defendant Wexford Health Sources, Inc.'s ("Wexford") Motion to Dismiss (ECF No. 30), in which defendant PSIMED, Inc. ("PSIMED") has been permitted to join (ECF Nos. 33, 80), and the plaintiff' Motion for Entry of Default (ECF No. 35).

## RELEVANT PROCEDURAL HISTORY

The plaintiff filed his initial Complaint (ECF No. 2) on December 7, 2018. Per order of the court, on April 22, 2019, summonses were issued for all of the defendants named in the initial Complaint, and they were delivered to the United States Marshals Service ("USMS") for personal service on each defendant. (ECF No. 6). On May 21, 2019, the USMS filed returns indicating that service of each of the summonses was executed on Assistant Commissioner David Farmer on May 15, 2019. (ECF No. 7). According to the

docket sheet, responsive pleadings were due on June 5, 2019. (*Id.*) However, the process delivered to Assistant Commissioner Farmer was not properly served.

On June 4, 2019, defendant Bess filed an Answer (ECF No. 8). On June 5, 2019, defendants Wexford, Lye, Shrewsbery and May filed a Motion to Dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure for improper service of process. (ECF No. 9). On October 18, 2019, defendants PSIMED and Thistlethwaite moved to join in the Wexford defendants' Motion to Dismiss (ECF No. 15).

On November 12, 2019, the undersigned entered an Order quashing the initial summonses and ordering reissuance thereof for proper service on the individual defendants by the USMS. (ECF No. 17). The undersigned further ordered service of the summonses for Wexford and PSIMED by certified mail, with return receipt and restricted delivery to their authorized agents. (*Id.*) As a result of the improper service of the summonses and the re-issuance of process for all defendants, Judge Copenhaver denied Wexford's initial Motion to Dismiss (ECF No. 9) and PSIMED and Thistlethwaite's Motion to Join (ECF No. 15) without prejudice. (ECF No. 39). He also dismissed the Mount Olive Correctional Complex ("MOCC") as a non-suable state entity that is entitled to immunity under the Eleventh Amendment. (*Id.*)

According to a docket entry on November 18, 2019, Wexford's summons was served by certified mail on November 15, 2019, and its responsive pleading was due on December 6, 2019. (ECF No. 24). A docket entry on November 25, 2019 indicates that PSIMED's summons was served by certified mail on November 22, 2019, and its responsive pleading was due on December 13, 2019. (ECF No. 26). Additional docket entries indicate that the summonses were served on the individual defendants on

2

November 22, 2019, and their responsive pleadings were due on December 13, 2019. (ECF Nos. 27, 28 and 29). However, on November 20, 2019, in the midst of service of process, the plaintiff filed a Letter-Form Motion to Amend Complaint (ECF No. 25), in which he restated and added allegations against the defendants named in the original Complaint and also sought to add claims against additional defendants.

On December 6, 2019, Wexford filed the pending Motion to Dismiss (ECF No. 30). On December 13, 2019, PSIMED filed its Motion to Join in Wexford's Motion to Dismiss (ECF No. 33), which has been granted by separate Order (ECF No. 80), and defendants Lye, May, Shrewsbery, and Thistlethwaite filed Answers to the Complaint (ECF Nos. 32 and 34). Thus, all of the defendants filed timely responsive pleadings or motions to dismiss. Nevertheless, the plaintiff filed the instant Motion for Entry of Default (ECF No. 35) on December 23, 2019.[1]

On December 30, 2019, the plaintiff filed a Response to Wexford's Motion to Dismiss (ECF No. 40) and a Motion for Leave to File Second Amended Complaint (ECF No. 41), which simply appears to provide more detailed allegations pertaining to his claim under the Americans with Disabilities Act. On January 3, 2020, Wexford filed a Reply (ECF No. 43). On January 21, 2020, the plaintiff filed a sur-reply (ECF No. 50), which the undersigned has subsequently authorized. These motions are ripe for adjudication.

## **RELEVANT ALLEGATIONS**

In his initial Complaint, the plaintiff alleges that he has a "long history of depression, suicidal ideations, extreme self-mutilation, and suicide attempts due to

---

[1] The plaintiff's motion was signed on December 19, 2019. It is possible that the plaintiff had not yet received his service copies of the defendants' filings at that time. Nonetheless, the defendants' filings were timely.

3

depression." (ECF No. 2 at 2). The plaintiff alleges that, in August of 2018, Dr. Thistlethwaite, a psychiatrist employed by PSIMED, the contracted mental health care provider at MOCC, attempted to meet with him for mental health treatment in the common area of his prison pod, where other inmates could hear their conversations. The plaintiff alleges that he refused to meet with Thistlethwaite under those circumstances because it violated his right to privacy under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d-1320d-9.[2] The plaintiff further alleges that Thistlethwaite subsequently took him off his prescribed medications (Welbutrin and Depacote), which he took for depression and seizures, allegedly as a punishment for refusing treatment and for making and possessing wine in his cell. The plaintiff further contends that Thistlethwaite's large caseload and the overburdened mental health staff at MOCC have prohibited him from receiving proper mental health treatment.

The plaintiff further alleges that, after being removed from his medications, he suffered seizures, became depressed, and wanted to harm himself. He further states that, on October 10, 2018, he attempted suicide by ingesting a paperclip sharpened like a needle.[3] On October 16, 2018, the plaintiff was taken to Charleston Area Medical Center's

---

[2] There is no private right of action that could support the filing of a civil lawsuit under HIPAA. Rather, the statute provides for civil and criminal penalties that may be imposed on persons who improperly handle or disclose individually identifiable health information, and enforcement proceedings may only be initiated by the Secretary of Health and Human Services, or authorized state authorities. *See Logan v. Dep't of Veterans Affairs*, 357 F.Supp.2d 149, 155 (D.D.C. 2004); see also 42 U.S.C. §§ 1320d-d-8 and 300gg-22. Therefore, because he may not bring an individual civil lawsuit for an alleged violation of HIPAA, the undersigned proposes that he presiding District Judge **FIND** that the plaintiff's Complaint, even as amended, fails to state a claim upon which relief can be granted with respect to the alleged HIPAA violation.

[3] The plaintiff's proposed First Amended Complaint clarifies that he ingested two paperclips on October 10, 2018. Additionally, although it is unclear of the timing thereof, the First Amended Complaint further states that the plaintiff also allegedly ingested a pencil and placed another straightened paperclip into his urethra.

4

Memorial Hospital ("CAMC") for emergency evaluation. He was discharged with instructions to see a gastroenterologist and a urologist within two days, for removal of the objects, and he was instructed to return to the hospital if he developed certain complications, including nausea, vomiting, rectal bleeding, or increased pain. However, the plaintiff alleges that Dr. Lye, Sandra May, and Josh Shrewsbery, who are employees of Wexford, the contracted medical provider at MOCC, failed to ensure that his outside medical appointments occurred for over two months, and that his condition worsened during that time.

The plaintiff alleges that, on November 19, 2018, he developed rectal bleeding and passed out in his cell, hitting his head. Yet, he was not returned to CAMC for evaluation or surgical intervention at that time. The plaintiff further contends that the defendant medical providers were laughing at him and hoping that the delay in receiving outside treatment would cause him additional harm. When he asked why it was taking so long to be taken to his outside appointments, Shrewsbery allegedly told the plaintiff "that's Wexford's policy and procedure." The plaintiff alleges that this policy and procedure put him at risk of further harm or death and unconstitutionally ignored his serious medical needs. The initial Complaint alleges that this conduct violations his rights under the federal and state constitutions and the Americans with Disabilities Act ("ADA").

The initial Complaint further alleges that the plaintiff attempted to grieve these issues through the West Virginia Division of Corrections' ("WVDOC") prisoner grievance process, but has been denied the ability to exhaust that process by the conduct of correctional staff who have either refused to submit his grievances or refused to mail his grievance appeals.

The plaintiff has twice moved for leave to amend his Complaint. His First Amended Complaint repeats the allegations in the initial Complaint, asserts additional allegations concerning the conduct of other medical and mental health providers, and further asserts that both Wexford and PSIMED have policies or customs to delay or deny treatment as a cost-saving measure. The Second Amended Complaint adds allegations related solely to the plaintiff's ADA claim, asserting that, while awaiting his outside treatment, he was housed in the prison's infirmary and was discriminatorily denied access to numerous prison programs, benefits, and activities, due to his mental disabilities. By separate Order, the undersigned has denied the plaintiff's motions for leave to amend his complaint as related to defendants Wexford and PSIMED.

## ANALYSIS

*I.     Plaintiff's Motion for Entry of Default*

Rule 55(a) of the Federal Rules of Civil Procedure requires that default be entered by the Clerk when "a party against whom a judgment for affirmative relief is sought" has "failed to plead or otherwise defend and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Furthermore, "Rule [55(b)] of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also* Fed. R. Civ. P. 55(b).

The plaintiff filed his Motion for Entry of Default (ECF No. 35) after all of the defendants had timely responded to his initial Complaint. Thus, the undersigned proposes that the presiding District Judge **FIND** that entry of default and a default judgment against the defendants is not warranted. Accordingly, it is respectfully

**RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Entry of Default (ECF No. 35).

## II. *Wexford and PSIMED's Motion to Dismiss*

Wexford and PSIMED have moved to dismiss the plaintiff's initial Complaint on various bases. First, they claim that the Complaint fails to sufficiently allege any official policy or custom of either defendant that resulted in the plaintiff's alleged constitutional injuries. Second, these defendants claim that the plaintiff cannot pursue any medical negligence or malpractice claims herein because he failed to comply with the pre-requisites of the West Virginia Medical Professional Liability Act. They further claim that the plaintiff has failed to state any plausible claim against them under the West Virginia Constitution or any other specified provision of state law. Finally, they assert that the plaintiff has failed to state a sufficient claim against them under the Americans with Disabilities Act. The undersigned will address each argument for dismissal in turn.

### A. Standard of review

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. Nonetheless, the complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Id.* (internal quotation marks omitted); *see also Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Otherwise, it is subject to dismissal on screening by the court or a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, such as the one filed by the defendants herein.

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447,

8

452 (4th Cir. 2017) (internal quotation marks omitted). However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

### B.  Eighth Amendment claims against Wexford and PSIMED

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833. "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have

9

been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *Id.* Yet, simple negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Miltier*, 896 F.2d at 851-852. The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

As properly noted by the defendants' Motion to Dismiss, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of rights guaranteed by the United States Constitution or other federal laws. *Rendall-Baker v. Kohn*, 547 U.S. 830, 838 (1982). Because Wexford and PSIMED are contracted medical and mental health providers for the WVDOC, a state agency with oversight of MOCC, the deliberate indifference standard is applicable to the

10

conduct of those entities and their employees. *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law"). However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original); *see also Green v. Obsu*, No. CV ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) ("Standards applicable to municipalities are also applicable to private corporations acting under color of state law" and such "liability has been extended to private entities operating under color of state law, including private prison health care providers.") (citing *West*, 487 U.S. at 49; *Polk Cty. v. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin*, 195 F.3d at 728).

> A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04.

*Green*, 2020 WL 758141, at *10. As asserted by the defendants' motion documents:

> "An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" S*emple v. City of Moundsville*, 195 F .3d 708, 712 (4th Cir. 1999) (citation omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), and *Spell v. McDaniel*, 824 F.2d 1380, 1386 ( 4th Cir. 1987)). Plaintiff sets forth no allegation that there is the existence of a blanket policy "intended to . . .

11

> establish fixed plans of action to be followed under similar circumstances," as described in *Semple*. The allegations, at best, show this was an episodic exercise of discretion in regard to when Plaintiff should see a gastroenterologist, as Plaintiff claims Mr. Shrewsbery started the process for Plaintiff to see a gastroenterologist.

(ECF No. 31 at 4-5).

In *Green*, the Court further noted that:

> "[o]utside of such formal decisionmaking channels, a [] custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). A policy or custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, 824 F.2d at 1387; *see Holloman*, 661 F. App'x at 799. In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted).

2020 WL 758141, at *10. "A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations . . . ." *Id.* at *11. As noted above, these same principles extend to the liability of private contractors acting under color of state law.

The Motion to Dismiss filed by Wexford and PSIMED asserts that the plaintiff's Complaint fails to state a plausible Eighth Amendment claim against them because it does not sufficiently allege that any policy or custom of either defendant caused the alleged violation of his constitutional rights. Specifically, their Memorandum of Law asserts:

12

> Even taking all facts pled in the Complaint as true and giving Plaintiff all inferences, no reasonable person could conclude that Plaintiff has alleged any policy or custom of Wexford caused the alleged deprivation of his rights under any provision of the United States Constitution or any federal law. Therefore, dismissal of the Complaint is warranted.

(ECF No. 31 at 5). The same argument is made by PSIMED. (ECF No. 33 at 1-2).

In his proposed First Amended Complaint (ECF No. 25-1) and his Response to the Motion to Dismiss (ECF No. 40), the plaintiff attempts to clarify that he is alleging that Wexford and PSIMED acted in accordance with a policy or custom of delaying or denying prescribed or necessary treatment as a cost-saving measure. However, even as amended, the Complaint fails to sufficiently allege that these alleged policies or customs have been applied in any widespread manner. *See, e.g., Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 944 (11th Cir. 2017) (holding plaintiff failed to show a custom of providing inadequate medical care when plaintiff's claims rest only on one inmate's experiences); *Payne v. Sevier Cty.*, 681 F. App'x 443, 446–47 (6th Cir. 2017) (holding "five instances of alleged misconduct, over three months, all involving the plaintiff himself is not enough to prove a custom"); *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015) (holding allegations "limited to the events surrounding the plaintiffs" are insufficient to establish a widespread practice or custom). Rather, he alleges only that <u>he</u> was provided inadequate treatment.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Complaint, even as amended, fails to state any plausible constitutional claim upon which relief can be granted against Wexford and PSIMED.

### C. Potential negligence claims against these defendants

The defendants' Motion to Dismiss also asserts that the plaintiff is barred from pursuing any medical negligence or medical malpractice claims because he has not complied with the prerequisites of the West Virginia Medical Professional Liability Act to provide a Notice of Claim and a Screening Certificate of Merit. Before filing a medical malpractice action against any health care provider, the plaintiff must comply with the requirements of West Virginia Code § 55-7B-6, part of the Medical Professional Liability Act ("MPLA"), which provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6. The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of

contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i).

The MPLA requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision). Thus, because the plaintiff did not comply with the MPLA requirements with respect to any proposed defendant prior to filing his Complaint, the defendants asserts that any negligence or medical malpractice claim he is alleging must be dismissed.

The plaintiff does not dispute his failure to comply with the MPLA requirements in advance of filing his Complaint. Rather, his Response argues that, in light of his indigent and incarcerated status, he "is simply unable to comply" with the MPLA prerequisites and, thus, the court should "refuse to enforce such a law." (ECF No. 40 at 3). However, there is no exception to these requirements for indigent prisoners. Despite being an indigent prisoner and proceeding *pro se*, the plaintiff is expected to research and comply with the laws applicable to his case.

It is evident that the plaintiff failed to comply with all of the requirements of the West Virginia MPLA prior to filing his Complaint. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of any medical negligence or malpractice claims alleged by the plaintiff is required because the plaintiff failed to meet the requirements of the MPLA.

### D. Other state law claims against these defendants

The plaintiff's Complaint, as amended, generally asserts that the conduct of these defendants violated his rights under the West Virginia Constitution and other state laws. However, he fails to specify any other provisions of state law and how the defendants' conduct allegedly violated those provisions. Thus, the defendants' Motion to Dismiss asserts that his alleged state law claims must be dismissed for failure to state a claim upon which relief can be granted. Additionally, their Memorandum of Law states:

> In West Virginia, under the State's Constitution, the only private cause of action that exists stemming from a violation of a constitutional right afforded by the West Virginia Constitution is "where state government, or its entities, cause injury to a citizen by denying due process." *Hutchison v. City of Huntington*, 198 W.Va. 139, 150, 479 S.E.2d 649, 660 (1996). The State's "due process" clause is found in Article 3 § 10 of the West Virginia Constitution. To date, however, the Supreme Court of Appeals of West Virginia has not recognized any other private cause of action stemming solely from a violation of any other Article and/or Section of the West Virginia Constitution. *See e.g. Hill v. Stower*, 224 W. Va. 51, 55-56, 680 S.E.2d 66, 70-71 (2009) (rejecting a private cause of action stemming from a violation of the West Virginia Constitution's right to run for public office, which is a fundamental right recognized in *State ex rel. Billings v. The City of Point Pleasant*, 460 S.E.2d 436 (W.Va. 1995)). Plaintiff has not set forth any allegation that his due process rights were violated by the alleged failure to timely refer him to a gastroenterologist. There is no factual predicate for any claim for violation of Plaintiff's due process rights under the West Virginia Constitution and therefore, this claim should be dismissed.

(ECF No. 31 at 6-7).

The plaintiff's Response does not specifically address this argument. Rather, it just, again, summarily states that the defendants' conduct violated the West Virginia Constitution and other state laws.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint, even as amended, fails to state a plausible due process claim under

16

Article III, § 10 of the West Virginia Constitution, and that state law has not recognized any other cognizable claim under other provisions of the state constitution.

Moreover, the plaintiff has not identified any other West Virginia law that was allegedly violated by the defendants' conduct. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations are insufficient to state any plausible state law claim against Wexford and PSIMED.

### E. Claims under the Americans with Disabilities Act ("ADA")

The plaintiff's initial Complaint summarily states that "the named defendants' actions and inactions" violated 'the disabilities Act." (ECF No. 2 at 5). While recognizing that "inmates are protected by Title II of the ADA," the defendants' Motion to Dismiss asserts that the Complaint fails to set forth sufficient facts to support a claim thereunder. Their Memorandum of Law states:

> Generally, inmates are protected by Title II of the ADA. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998); *Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999); *Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988). However, this protection for inmates is limited. In *Miller v. Hinton*, 288 Fed. Appx. 901 (4th Cir. 2008), the Fourth Circuit Court of Appeals found that merely failing to attend to the medical needs of a disabled prisoner is not violation of the ADA. *Miller*, 288 Fed. Appx. at 903 citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Further, in *Spencer v. Easter*, 109 Fed. Appx. 571 (4th Cir. 2004), the Fourth Circuit Court of Appeals dismissed the inmate's claim for discrimination under the ADA because he could not establish that the failure to timely provide him his medications stemmed from any discriminatory intent due to any alleged disability. *Spencer*, 109 Fed. Appx. at 573. The *Spencer* Court cited to *Bryant*, stating in that case that if the inmate was not treated worse because he was disabled then there was no violation under the ADA. *Id*. Here, Plaintiff does not set forth any allegation that he is disabled. Further, he does not set forth any allegation that the failure to timely refer him to a gastroenterologist was based on any alleged disability. Plaintiff has not set forth any claim that any alleged discriminatory intent was due to any alleged disability. Even taking Plaintiff's allegations in the Complaint as true, there are simply no

17

>allegations to support any claim for violation of the ADA. Therefore, it is appropriate for this Court to dismiss this claim.

(ECF No. 31 at 7-8).

The plaintiff's Response first states that he has been declared "mentally disabled" by the federal government and that "withholding depression medication and delaying surgery for his suicide attempt and self-mutilation is a violation of the ADA." (ECF No. 40 at 4). He further contends that the defendants "acted in concert with each other in an attempt to intentionally end his life, by allowing him to commit suicide as he was a 'problem inmate.'" (*Id.*) As noted in the defendants' Reply, these allegations are insufficient to support a plausible ADA claim. (ECF No. 43 at 5). Their Reply further states:

>All of Plaintiff's allegations against [sic] in regard to the ADA claim are simply his beliefs that are not supported by any factual assertions. Plaintiff's Complaint contains no factual allegations that his treatment was delayed because of any alleged disability. He simply makes this conclusion without any factual support. No reasonable inferences can be drawn to establish any such discriminatory intent.

(*Id.*)

Although not addressed in the parties' briefs, case law makes it clear that private entities, such as Wexford and PSIMED, and their individual employees, even where contracted to provide services to state prisoners, are not "public entities" for purposes of Title II of the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998). The ADA prohibits a public entity from excluding qualified individuals with disabilities from participating in, or benefiting from, the entity's services, programs, or activities. 42 U.S.C. § 12132; *Tennessee v. Lane,* 541 U.S. 509 (2004). The term "public entity" includes "any department, agency, special purpose district or other instrumentality of a State or States

or local government." 42 U.S.C. § 12131(1)(B); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("noting a public entity," "as it is defined within the statute, does not include individuals").

The plaintiff's ADA claims appear to be addressing the conduct of Wexford, PSIMED, and their individual employees, who are not "public entities." Thus, the undersigned proposes that the presiding District Judge **FIND** that the Complaint, even as amended, fails to state a claim upon which relief can be granted under Title II of the ADA.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion to Dismiss filed by defendant Wexford Health Sources, Inc., and joined by PSIMED, Inc., (ECF No. 30) be **GRANTED.** It is further respectfully **RECOMMENDED** that the presiding District Judge leave this matter referred to the undersigned for additional proceedings concerning the claims against the other defendants named in the plaintiff's First Amended Complaint.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 8, 2020

Dwane L. Tinsley
United States Magistrate Judge

20