UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


RONALD L. COSNER,

        Plaintiff,

v.                                  Civil Action No. 2:18-cv-01499

DR. THISTLETHWAIT, et al.,

        Defendants.


MEMORANDUM OPINION AND ORDER


        This action was previously referred to United States

Magistrate Judge Dwayne L. Tinsley for submission to the court

of his Proposed Findings and Recommendation ("PF&R") for

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  On July 8,

2020, the magistrate judge entered a PF&R recommending that the

court grant the motion to dismiss filed by defendant Wexford

Health Sources, Inc., ("Wexford") and joined by PSIMED, Inc

("PSIMED").  PF&R 19, ECF No. 81; see Def. Mot. Dism., ECF No.

30.  Plaintiff filed objections to the PF&R on August 14, 2020.

ECF No. 97.  Defendants have neither objected nor responded to

plaintiff's objections.

## I.   Background

The plaintiff, proceeding pro se, filed his original complaint on December 7, 2018.  ECF No. 2.  On November 20, 2019 he filed a letter-form motion to amend his complaint, with an attached amended complaint.  ECF No. 25.  He also filed leave to file a second amended complaint on December 30, 2019.  ECF No. 41.  On July 8, 2020, the same date as the issuance of the PF&R, the magistrate judge granted leave to file the first amended complaint in part and denied it in part.  ECF No. 82.  In relevant part, that order found that the claims against Wexford and PSIMED were futile and amendment was denied specifically as to those plaintiffs.  The magistrate judge granted leave to amend to the extent that the first amended complaint alleged claims against other defendants.  The magistrate judge also denied leave to file the proposed second amended complaint as futile.

The first amended complaint modifies the plaintiff's allegations against Wexford and PSIMED somewhat but does not overcome the deficiencies outlined in the PF&R and adopted herein.  The allegations in the original complaint govern, given the magistrate judge's order.  However, to the extent the two complaints differ, the court deals herein with allegations in both the amended and original complaint.

## II.  Relevant Allegations

The plaintiff is an inmate at Mount Olive Correctional Complex (MOCC).  In his complaint, the plaintiff alleges that he has an "extensive history of self-harm, depression, suicidal idolations [sic] with numerous suicide attempts." (ECF No. 83 at 2).  The plaintiff alleges that, in August of 2018, Dr. Thistlethwaite, a psychiatrist employed by PSIMED, the contracted mental health care provider at MOCC, attempted to meet with him for mental health treatment in the common area of his prison pod, where other inmates could hear their conversations.  The plaintiff alleges that he refused to meet with Thistlethwaite under those circumstances because it violated his right to privacy under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d-1320d-9.  The plaintiff further alleges that Thistlethwaite subsequently took him off his prescribed medications (Welbutrin and Depacote), which he took for depression and seizures, in retribution for refusing treatment and for making and possessing wine in his cell.  The plaintiff further contends that Thistlethwaite's large caseload and the overburdened mental health staff at MOCC have prohibited him from receiving proper mental health treatment.  The plaintiff

ascribes the inadequate staffing to PSIMED's policies and procedures.

The plaintiff further alleges that, after being removed from his medications, he suffered seizures, became depressed, and wanted to harm himself.  He further states that, on October 10, 2018, he attempted suicide by ingesting two paperclips sharpened like needles.[1]  On October 16, 2018, the plaintiff was taken to Charleston Area Medical Center's Memorial Hospital ("CAMC") for emergency evaluation.  He was discharged with instructions to see a gastroenterologist and a urologist within two days, for removal of the objects, and he was instructed to return to the hospital if he developed certain complications, including nausea, vomiting, rectal bleeding, or increased pain.  However, the plaintiff alleges that Dr. Lye, Sandra May, and Josh Shrewsbery, who are employees of Wexford, the contracted medical provider at MOCC, failed to ensure that his outside medical appointments occurred for over two months, and that his condition worsened during that time.  He attributes the delay in scheduling to "policies and procedures in scheduling . . . to save money", including the requirement that

---

[1] The plaintiff also alleges that he ingested a pencil and placed another straightened paperclip into his urethra, though the timing in the complaint is unclear from the complaint.

Dr. Ritz, a Wexford employee, approve surgeries and appointments before they are obtained.

The plaintiff alleges that, on November 10, 2018, he began hemorrhaging large amounts of blood and passed out in his cell, hitting his head.  The nurse on duty contacted Shrewsberry and Sandra May, yet no medical treatment was ordered, and he was not returned to CAMC for evaluation or surgical intervention at that time.  The plaintiff received urological surgery on November 20, 2018 but had not yet received abdominal surgery at the time of submitting the amended complaint on November 20, 2019.

The complaint further alleges that the plaintiff attempted to grieve these issues through the West Virginia Division of Corrections' ("WVDOC") prisoner grievance process, but has been denied the ability to exhaust that process by the conduct of correctional staff who have either refused to submit his grievances or refused to mail his grievance appeals.

### III. Standard of Review

Upon an objection, the court reviews a PF&R de novo. Specifically, "[t]he Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'"  Diamond v.

Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir.
2005) (first alteration added) (quoting 28 U.S.C. § 636(b)(1)).

        Pro se complaints are held to less stringent standards
than those drafted by attorneys, and the court is obliged to
construe liberally such complaints.  Nonetheless, the complaint
must "contain enough facts to state a claim for relief that is
plausible on its face."  Id. (internal quotation marks omitted);
see also Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193,
208 (4th Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009)).  Otherwise, it is subject to dismissal on screening
by the court or a motion to dismiss under Rule 12(b)(6) of the
Federal Rules of Civil Procedure, such as the one filed by the
defendants herein.

        In general, a pleading must include "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2); see McCleary-Evans v. Md.
Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th
Cir. 2015) (stating that this requirement exists "to give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests" (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007))).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Iqbal, 556 U.S. at 678.  Stated

another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  Woods v. City of Greensboro, 855 F.3d 639, 647 (4th Cir. 2017) (quoting Twombly, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  Id. at 648 (quoting McCleary-Evans, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, the Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief."  Id.  Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense."  Id.

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged."  Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

However, in <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  <u>Id.</u> at 555.

## IV.  Discussion

The plaintiff does not object to the PF&R findings that recommend dismissal of all claims against PSIMED, Inc.  Pl. Objs. 3, ECF No. 97.  Inasmuch as the plaintiff does not object to these findings, they are adopted and PSIMED, Inc. is dismissed from the case as to all claims.

### Constitutional Claims Under 42 U.S.C. § 1983

The PF&R recommends dismissal of any potential constitutional claims against Wexford, as well as PSIMED, for failure to state a plausible claim upon which relief can be granted because the plaintiff has failed to allege that his injuries were caused by policies or customs of either defendant.

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of rights guaranteed by the United States Constitution or other federal laws.  West v. Atkins, 487 U.S. 42, 48 (1998).  Because Wexford, as well as PSIMED, are contracted medical and mental health providers for the WVDOC, a state agency with oversight of MOCC, they are persons acting under color of state law for purposes of § 1983.  See e.g., id.  However, "[a] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original).

The standards for liability under § 1983 for private corporations acting under color of state law are the same as those applicable to municipalities.  Id.; see also Green v. Obsu, No. CV ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) ("Monell liability has been extended to private entities operating under color of state law, including private prison health care providers") (citing West, 487 U.S. at 49; Polk Cty. v. Dodson, 454 U.S. 312, 320 (1981); Rodriguez v. Smithfield Packing Co., Inc., 338 F.3d 348, 355 (4th Cir. 2003)).  Thus, to state a viable Monell claim against a

corporation acting under color of state law, a plaintiff must show (1) that the corporation had an official policy or custom and that (2) such policy or custom caused his injuries.  See, e.g., Bd. of Comm'rs of Bryan Cty., v. Brown, 520 U.S. 397, 403 (1997); Kirby v. City of Elizabeth City, 388 F.3d 440, 451 (4th Cir. 2004), cert. denied, 547 U.S. 1187 (2006); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

An official policy is proven in one of three ways: (1) a written ordinance or regulation, (2) affirmative decisions by policymaking officials, or (3) omissions made by policymaking officials that  "manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  This ensures that those held liable "are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (emphasis in original).

As with an entity such as Wexford, municipal policy may be made through formal decisionmaking channels or through "municipal custom [which] may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" Carter, 164 F.3d at 218 (quoting Monell, 436 U.S. at 691).  A custom becomes attributable to the municipality "when the

duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." Spell v. McDaniel, 824 F.2d, 1380, 1387 (4th Cir. 1987). A showing of policy through deliberate indifference requires "continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted).

The Supreme Court has urged particular caution where municipal liability is premised on either deliberate indifference or on custom. Board of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. Thus, a plaintiff must point to a "specific deficiency or deficiencies . . . such as to make the specific

11

violation almost bound to happen, sooner or later." <u>Spell</u>, 824 F.2d at 1390.

The plaintiff alleges that his need for surgery was delayed by nearly two months because of scheduling policies that required approval of surgeries by Wexford's Dr. Ritz and that were designed to save money. Amended Compl. ¶¶10, 18. It is noted that the plaintiff further alleges that he received inadequate care from PSIMED's Dr. Thistlethwaite because of policies and procedures that resulted in an abnormally large gap between the demands of the caseload and available staff. <u>Id.</u> at ¶19. This is the full extent of claims regarding a policy or custom by Wexford or PSIMED in either the original or the first amended complaint.

Wexford, as well as PSIMED, argue that the facts as pled in the original complaint, taken as true, do not amount to an allegation that a policy or custom of either defendant caused the alleged deprivation of plaintiff's rights under the Constitution or federal law. ECF Nos. 31, 33.

The allegations, in both the original and first amended complaint, do not amount to a claim of an official policy, approved by someone with final authority through formal decision-making channels. No facts are pled regarding how these policies were adopted and by whom they were authorized. Rather,

plaintiff merely attaches the conclusory label of "practice and procedure" to the conduct of employees of Wexford and PSIMED.

Nor do the allegations relate to a practice "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61.  Even as amended, both the original and first amended complaint only allege that the plaintiff himself was provided with inadequate treatment resulting from the alleged policies and practices.  Without allegations that the challenged practice was widespread, the practice cannot be cast as a "custom" for § 1983 purposes.  See, e.g., Denham v. Corizon Health, Inc., 675 F. App'x 935, 944 (11th Cir. 2017) (holding plaintiff failed to show a custom of providing inadequate medical care when plaintiff's claims rest only on one inmate's experiences); Payne v. Sevier Cty., 681 F. App'x 443, 446–47 (6th Cir. 2017) (holding "five instances of alleged misconduct, over three months, all involving the plaintiff himself is not enough to prove a custom"); Culbertson v. Lykos, 790 F.3d 608, 629 (5th Cir. 2015) (holding allegations "limited to the events surrounding the plaintiffs" are insufficient to establish a widespread practice or custom).

Finally, the lack of factual allegations regarding widespread deprivation of constitutional rights caused by the defendants' policies is also fatal to a finding of "deliberate

indifference."  The facts as pled do not give rise to an
inference that Wexford, or PSIMED, were on actual or
constructive notice of constitutional deprivations necessary to
give rise to deliberate indifference.  See Pembaur v.
Cincinnati, 475 U.S. 469, 483-484, (1986).

        In his objections to the PF&R, the plaintiff asks the
court to allow him to file a second amended complaint[2] to clarify
that Wexford had a specific policy, called the "collegial review
policy" which delayed the plaintiff's needed emergency care in
order to save money.  He asserts that he will be able to show
that the policy has been fatal to other prisoners.

        Leave to amend should be liberally allowed and should
be denied "only when the amendment would be prejudicial to the
opposing party, there has been bad faith on the part of the
moving party, or the amendment would be futile."  Johnson v.
Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing
Foman v. Davis, 371 U.S. 178, 182 (1962)).

        Granting plaintiff leave to amend would be prejudicial
to Wexford for several reasons.  First, a request for leave to
file an amended complaint embedded within PF&R objections is

---

[2] This second amended complaint is presumably distinct from the second amended
complaint that the plaintiff already requested leave to file, and which the
magistrate judge denied.  That motion for leave only pertained to the claims
under the Americans with Disabilities Act.

14

improper.  Wexford did not respond to the plaintiff's request for leave and may well have not understood this request as a motion for leave for responsive purposes.  Second, the timing of leave is improper inasmuch as the plaintiff waited to seek to cure these defects until after Wexford had filed a motion to dismiss and the magistrate judge rendered a PF&R.  The plaintiff has not indicated that he was unaware of the existence of an express policy when he filed his original complaint or his first amended complaint.  Instead, he argues that he is entitled to leniency as a pro se plaintiff.  Indeed, pro se litigants are entitled to some leniency but defendants are similarly entitled to resolution without undue delay.  Finally, the plaintiff has already sought leave to file a first amended complaint, which was granted in part and denied in part by the magistrate judge, and a second amended complaint to address the ADA claim, which was denied by the magistrate judge.

The court therefore adopts the PF&R finding that the complaint fails to state any plausible constitutional claim upon which relief can be granted against Wexford, and for that matter PSIMED, and denies the plaintiff's request in his objections to the extent it is construed as a motion for leave to file an amended complaint.

### V.   Potential Negligence Claims

The motion to dismiss also asserts that the plaintiff is barred from pursuing any medical negligence or medical malpractice claims because he has not complied with the prerequisites of the West Virginia Medical Professional Liability Act ("MPLA") to provide a Notice of Claim and a Screening Certificate of Merit.  So before filing a medical malpractice action against any health care provider, the plaintiff must comply with the requirements of West Virginia Code § 55-7B-6, part of the MPLA.

The MPLA provides, in pertinent part, as follows:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation.  The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit.  The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.  A separate screening certificate of merit must

> be provided for each health care provider against whom
> a claim is asserted. The person signing the screening
> certificate of merit shall have no financial interest
> in the underlying claim, but may participate as an
> expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6.  The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."  W. Va. Code § 55-7B-2(i).

The MPLA requirements are mandatory for medical malpractice or negligence claims filed in federal courts.  <u>See Stanley v. United States</u>, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); <u>see also</u> <u>Gaylor v. Dagher</u>, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); <u>Motto v. Correctional Medical Services</u>, Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision). Because the plaintiff did not comply with the MPLA requirements with respect to any proposed defendant prior to filing the original complaint, the PF&R finds and recommends that any negligence or medical malpractice claim he is alleging should be dismissed.

The plaintiff does not dispute his non-compliance with the terms of the MPLA, but instead argues that the requirements of the MPLA are unconstitutional as applied to him because they deny equal access of law to indigent prisoners.  This, he says, is because, due to incarceration and indigency, indigent prisoners as a class are unable to access a screening certificate of merit from an independent healthcare provider and must instead rely on the prison staff.

The Supreme Court has made clear that a showing of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  <u>Washington v. Davis</u>, 426 U.S. 229, 242 (1976) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination"); <u>see</u> <u>also</u> <u>Personnel Adm'r of Massachusetts v.</u> <u>Feeney</u>, 442 U.S. 256, 274 (1977) ("[Disproportionate] impact provides an 'important starting point' but purposeful discrimination is 'the condition that offends the Constitution'") (internal citation omitted).  The plaintiff states in his objections that he does not contend it was the legislature's intent in drafting the MPLA to exclude indigent prisoners from accessing the civil justice system.  ECF No. 97 at 4 ("I however, do not believe this exclusion of indigent prisoners was to be intended legislative intent, but has this

effect upon us regaurdlessly [sic] so"). Because the plaintiff
does not argue discriminatory intent or purpose against the
purported class, his challenge to the statute on equal
protection grounds fails.

In his objections, the plaintiff cites to <u>Lewis v.
Casey</u>, in which a concurring opinion lays out two lines of cases
which protect the right of prisoners to access the courts under
certain circumstances. 518 U.S. 343, 368 (1996) (Thomas, J.
concurring). He argues that the terms of the MPLA as applied to
him implicate both lines of cases. As the plaintiff quotes,
"[o]ne of these lines, rooted largely in principles of equal
protection, invalidated state filing and transcript fees and
imposed limited affirmative obligations on the States to ensure
that their <u>criminal procedures</u> did not discriminate on the basis
of poverty." <u>Id.</u> (emphasis added). The requirements of the
MPLA, relating to civil claims of medical negligence, is plainly
not affected by this line of cases.

The second line of cases, involve "state prison
regulations that restricted or effectively prohibited inmates
from filing habeas corpus petitions or civil rights lawsuits in
federal court <u>to vindicate federally protected rights</u>." <u>Id.</u>
(emphasis added). As in criminal cases, the stakes at issue in
habeas petitions and civil rights claims are categorically

different from those involved in state law negligence claims. For equal protection purposes, nothing in either line of cases limits the ability of a state to impose non-discriminatory limitations on its own civil negligence actions, as West Virginia has with the MPLA.

Insofar as the plaintiff has not contested his non-compliance with the MPLA and has not demonstrated its invalidity, Wexford, as PSIMED would be, is entitled to dismissal of any potential negligence claim against it, and the PF&R's findings are adopted.

VI.  Other Matters to which No Objection is Filed

Other State Law Claims

The plaintiff's original and first amended complaint alleges that the conduct of Wexford and PSIMED violated his rights under the West Virginia Constitution and other laws.  He fails to allege any particular provision of state law or how the defendants' conduct violated state law.  This deficiency continued through the plaintiff's response to the motion to dismiss.  As a result, the PF&R appropriately found that the allegations are insufficient to state any plausible state law claim.

The plaintiff did not object to this finding in his objections to the PF&R and it is thus adopted by the court.

## Claims Under the Americans with Disabilities Act

The plaintiff alleges in both the original and the amended complaint that the defendants' conduct violated the Americans with Disabilities Act (ADA).  ECF No. 83 at 10.

The ADA prohibits a public entity from excluding qualified individuals with disabilities from participating in, or benefiting from, the entity's services, programs, or activities. 42 U.S.C. § 12132; Tennessee v. Lane, 541 U.S. 509 (2004).  The term "public entity" includes "any department, agency, special purpose district or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(B); see also Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("noting a public entity," "as it is defined within the statute, does not include individuals").

As the PF&R aptly observes, private entities, such as Wexford and PSIMED, and their individual employees, even where contracted to provide services to state prisoners, are not "public entities" for purposes of Title II of the ADA . See Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998).  Thus, the plaintiff fails to state a claim upon which relief can

21

be granted regarding any claims under the ADA as to these two defendants.

Inasmuch as the plaintiff does not object to these findings, they are adopted.

**Plaintiff's Motion for Entry of Default**

Finally, the plaintiff filed a motion for entry of default against all defendants on December 23, 2019.  ECF No. 35.

Rule 55(a) of the Federal Rules of Civil Procedure requires that default be entered by the Clerk when "a party against whom a judgment for affirmative relief is sought" has "failed to plead or otherwise defend and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Furthermore, "Rule [55(b)] of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982); see also Fed. R. Civ. P. 55(b).

The PF&R necessarily found that entry of default and an entry of default judgment were not warranted, given the plaintiff filed the motion after timely response by all defendants to this case, and recommended denial of that motion.

Inasmuch as the plaintiff did not object to these findings, they are adopted.

## VII. Conclusion

Accordingly, it is ORDERED that:

1. Plaintiff's objections to the PF&R be, and they hereby are, overruled;

2. The findings made in the PF&R of the magistrate judge be, and they hereby are, adopted by the court and incorporated herein;

3. Plaintiff's original complaint be, and it hereby is, dismissed with respect to defendants Wexford and PSIMED, as are the allegations made against them in the first amended complaint;

4. Plaintiff's motion for entry of default is denied.

The Clerk is directed to forward copies of this written opinion and order to plaintiff, all counsel of record, and the United States Magistrate Judge.

ENTER: September 29, 2020

John T. Copenhaver, Jr.
Senior United States District Judge