IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RONALD L. COSNER,

    Plaintiff,

v.                                              Case No. 2:18-cv-01499

DR. THISTLETHWAITE, et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the parties' cross-motions for summary judgment (ECF Nos. 69, 71, 85, 100, 105, and 109)[1], all of which concern exhaustion of administrative remedies.

**RELEVANT PROCEDURAL HISTORY**

This matter is proceeding on Ronald L. Cosner's ("Plaintiff") amended complaint (ECF No. 83). Plaintiff is incarcerated at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia. The amended complaint alleges that, in August of 2018, Plaintiff was taken off his seizure and depression medications and was denied mental health treatment by Dr. Thistlethwaite ("Thistlethwaite") after an argument concerning Plaintiff's refusal to meet with Thistlethwaite in a common area of his unit

---

[1] In ECF No. 104, Dr. Thistlethwaite and Tim Carper joined in the motions for summary judgment filed by the medical defendants (ECF Nos. 85 and 100).

where other inmates and staff were present and could overhear their discussions. Plaintiff alleges that he subsequently became depressed, suicidal, and suffered a seizure. He contends that MOCC's mental health director, who is not a defendant herein, placed him on suicide watch. However, he was allegedly told that Thistlethwaite refused to restore his medications because he had been making wine in his cell.

Plaintiff further alleges that he was subsequently told by defendant Tim Carper ("Carper"), a mental health counselor, that he would have to wait 90 days to be placed back on his depression medication and that he must stop making wine to receive it. Thus, Plaintiff contends that he was denied necessary medical treatment by Thistlethwaite and Carper as punishment.

The amended complaint further alleges that Plaintiff ingested two straightened paperclips on or about October 10, 2018.[2] Plaintiff reported his actions to defendant LPN Amanda Jones ("Jones"), who contacted the on-call medical provider, and an x-ray was ordered, which Plaintiff allegedly refused. However, Plaintiff contends that these medical providers did not contact the mental health staff to ensure that appropriate suicide precautions were instituted. The amended complaint further alleges that, several days later, Plaintiff vomited up one of the paper clips and inserted pieces of it into his urethra. He claims that, had he been placed on suicide watch, he would have been unable to engage in such self-harm.

On or around October 16, 2018, Plaintiff was x-rayed and sent to the Charleston Area Medical Center ("CAMC") Emergency Room ("ER"), where he was treated and released with instructions to follow-up with a gastroenterologist and a urologist for

---

[2] The date contained in the amended complaint is October 10, 2019; however, this appears to be a typographical error in light of the other dates contained therein. The amended complaint further alleges that Plaintiff had also swallowed a pencil on an unspecified date.

potential surgery to remove the foreign objects. Plaintiff contends that the CAMC doctor(s) directed that his follow-up visits occur within two days. He further contends that the instructions directed that he be returned to the ER if he suffered abnormal vital signs, fever, vomiting, or rectal bleeding.

Plaintiff alleges that, following his return to MOCC, defendants Dr. Lye ("Lye"), Sandra May ("May"), and Josh Shrewsberry ("Shrewsberry") were informed of the discharge instructions and failed to ensure that he received his follow-up appointments and surgery for over two months. Plaintiff further alleges that, approximately one week after his return from CAMC, Shrewsberry contacted Dr. Ritz ("Ritz"), the regional medical director, to approve his offsite treatment and surgery, but Ritz "did nothing to speed up the surgeries as was needed."

According to the amended complaint, on or about November 11, 2018, Plaintiff passed out in his cell and hit his head, while hemorrhaging large amounts of blood. Shrewsberry was contacted, but no medical treatment was ordered, and Plaintiff was not returned to the ER at that time. Ultimately, Plaintiff had urological surgery to remove the paper clip from his urethra on or about November 20, 2018, after he had filed his initial complaint herein.

Plaintiff subsequently attempted to mail a complaint about alleged violations of the Americans with Disabilities Act to the United States Department of Justice. However, his mail was returned as undeliverable. The amended complaint alleges that, on or about September 20, 2019, defendants Dylan Hayhurst ("Hayhurst") and Devin Lilly ("Lilly"), correctional officers at MOCC, brought the undelivered mail to Plaintiff's cell, where he was on suicide watch, and asked him to sign for the opened mail. Plaintiff further alleges that, as he sat on his cot and attempted to examine the mail, Lilly threw a pen back into

3

his cell. Then, Hayhurst allegedly deployed a Taser against Plaintiff, while stating "go ahead and file some more complaints." Plaintiff further alleges that these officers lied about their conduct in incident and disciplinary reports, which resulted in Plaintiff's punishment for a rules violation.

Plaintiff alleges that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments and constituted intentional infliction of emotional distress and negligence under state law. Plaintiff further contends that Defendants Hayhurst and Lilly committed assault and battery under state law.

Each defendant (collectively "Defendants") moved for summary judgment, asserting that they are entitled to judgment as a matter of law on all of Plaintiff's claims because he failed to exhaust the available administrative remedies prior to filing his complaints. (ECF Nos. 69, 71, 75, 100, 104, and 105).[3] Plaintiff opposed each motion and filed his own motion for summary judgment (ECF No. 109) contending that his unit managers caused his administrative grievances to "disappear" without logging them and ensuring their proper submission for response and appeal in a timely manner in order to prohibit exhaustion. Thus, Plaintiff contends that the exhaustion process was unavailable and that he should be able to pursue his claims despite non-exhaustion.

On August 4, 2020, the undersigned conducted a hearing during which the court heard argument concerning the parties' positions on the exhaustion issue and addressed the evidence of record, which will be discussed *infra*.

---

[3] Defendants Lye, May, and Shrewsberry have two pending motions for summary judgment (ECF Nos. 71 and 85). The first motion was filed before the court granted Plaintiff's amended complaint and then renewed their motion based upon the amended complaint. The motions are virtually identical. Accordingly, for ease of reference, the undersigned will hereinafter refer to the arguments as they appear in the renewed motion and memorandum contained in ECF Nos. 85 and 86.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, the court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

**ANALYSIS**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which contains the exhaustion requirement, was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th

5

Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Such exhaustion is mandatory regardless of the type of relief sought or offered through the administrative procedures and so long as the grievance tribunal has authority to take some responsive action. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not

bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

In accordance with W. Va. Code § 25-1A-2. the West Virginia Division of Corrections and Rehabilitation ("WVDCR") has instituted uniform procedures for filing an inmate grievance, which are found in Policy Directive 335.00. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." *Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *5 (S.D.W. Va. Feb. 6, 2018) (citing Policy Directive 335.00(V)(D)(4)). The procedure for filing an inmate grievance is as follows: An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit

manager is required to return an answer to the grievance back to the inmate within five days.  If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review.

Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." "The Warden/Administrator shall respond to the appeal . . . within five (5) days."  Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed.  The Commissioner is allotted ten days to respond to the appeal.  *Id.* (quoting Policy Directive 335.00).  Policy Directive 335.00 specifically states that, "'[e]xhaustion' shall mean submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner.  Rejections do not constitute exhaustion.  The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." Id. (quoting Policy Directive 335.00(V)(A)(5)).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved by the court before reaching the merits of the underlying claims for relief.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law.  See *Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2.

Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

In *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016), the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An inmate . . . need not exhaust unavailable remedies." *Id.* The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" (*Id.* at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). However, Plaintiff has not adequately demonstrated that the administrative remedy process was unavailable to him. "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *4 (S.D. W. Va. Sept. 12, 2017). Because an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Thus, contrary to Plaintiff's assertions, disputed questions of fact surrounding the issue of exhaustion of administrative remedies are to be resolved by the court, rather than a jury. *Id.*

Defendants have submitted affidavits and Plaintiff's mail log indicating that he did not timely submit grievance appeals concerning any of the issues that form the basis of the claims in his amended complaint and, thus, the available administrative remedy process was not exhausted concerning any of his claims. At best, Defendants assert, between August of 2018 and December of 2018, when he filed his initial complaint, the plaintiff filed one grievance concerning Dr. Thistlethwaite's termination of his

medication, which appears to have been submitted on or about October 29, 2018. Specifically, that grievance stated:

> I was taken off my Wellbutrin (depression medication) by mental health here at M.O.C.C. and since this happened I have complained about increased suicidal thoughts + depression I also recently committed serious self-harm and attempted suicide. The Psychiatrist who treats me here is being deliberately indifferent to my serious mental health illnesses + refuses to place me back on my medication. I believe he is responsible for my increased depression/suicidal ideation + recent self-mutilation/suicide attempt. Although I'm not suicidal at this time I am extremely depressed ongoing.

(ECF No. 85, Ex. 2; ECF No. 100, Ex. 2). However, as further noted by Defendants, that grievance was addressed by Wexford Health Sources, Inc.'s Health Services Administrator, as the first level responder on medical and mental health issues but it was not subsequently appealed to the Warden or the Commissioner. Therefore, it was not fully or properly exhausted.

Moreover, this grievance did not address any of Plaintiff's claims that he was denied timely and appropriate medical treatment for his conditions after he committed self-harm. Nor does the record contain evidence of any other grievance that addressed those issues that was filed on the proper form, timely submitted, and fully exhausted. Thus, Defendants have made a threshold showing that Plaintiff failed to exhaust any of his claims surrounding his medical and mental health treatment.

Likewise, Defendants Hayhurst and Lilly assert that the Plaintiff failed to properly exhaust the available administrative remedies concerning their alleged retaliation and use of excessive force against Plaintiff when they Tasered him and chided him about filing more complaints on September 20, 2019. There is no evidence of record showing that any grievances concerning these issues were timely submitted by the plaintiff and

properly appealed before Plaintiff filed his proposed amended complaint on November 20, 2019.

Defendant Bess also filed a motion for summary judgment asserting that, during the operative time period, Plaintiff failed to timely file and exhaust any grievances concerning Bess's alleged conduct about which he now complains. (ECF No. 70 at 6-7). In an order entered on July 8, 2020, the undersigned found that Plaintiff's amended complaint failed to state a plausible stand-alone claim concerning denial of access to the courts grounded in Bess's alleged interference with the grievance process, and that inmates have no liberty interest in filing grievances that could support a plausible due process claim. (ECF No. 82 at 4-5). Therefore, there is no basis for any actionable claim against Bess herein and whether Plaintiff exhausted any grievances addressing Bess's conduct is irrelevant to his ability to presently pursue any claims against Bess. Consequently, aside from the exhaustion issue, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint, as amended, fails to state any plausible claim for relief against Bess and, therefore, Bess should be dismissed as a defendant herein.

In response to Defendants' motions, and in support of his own motion for summary judgment, Plaintiff has offered several grievances that he allegedly attempted to file, which he claims his unit manager(s) caused to "disappear." The undersigned addressed each of these grievances with the parties on the record during the August 4, 2020 hearing.

The earliest grievance offered by Plaintiff is dated August 31, 2018. (ECF No. 75, Ex. 1 at 8). However, the grievance contains no grievance number. The grievance asserts that Plaintiff was being punished by Tim Carper and "the psychiatrist" (presumed to be

Dr. Thistlethwaite) by being taken off his medication for making wine in his cell, even though he was allegedly suicidal. Plaintiff requested to be put back on his medication.

The grievance contains no response at any level and Plaintiff failed to adequately explain when and how he received this copy of the grievance that had allegedly been submitted and then "disappeared." However, Plaintiff allegedly obtained a copy of the grievance and then initialed the grievance in the space for an appeal to the Warden on October 19, 2018 - a date falling outside the five-day period allotted for such an appeal.

Moreover, although the grievance process permits an inmate to appeal to the next level notwithstanding a lack of response at the initial level, Plaintiff did not sign and date the appropriate line stating that he did not receive an initial response to the grievance. Nor is there any evidence that this grievance was ever received by the Warden. Thus, this grievance was not properly exhausted. Furthermore, Plaintiff has not offered any evidence to indicate that he inquired about the status of this grievance during the period permitted for proper exhaustion. Thus, he has not demonstrated that the grievance process was unavailable to him with respect to this grievance.

The second grievance offered by the plaintiff is dated October 24, 2018. (ECF No. 75, Ex. 1 at 9). This grievance, which also contains no grievance number, asserts that the plaintiff's October 16, 2018 discharge instructions from CAMC stated that he was to have surgeries to remove the paper clips in two days. He claims that the delay in the surgeries was deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. He requests that the surgeries be performed and that he receive damages.

This grievance does not contain a response at any level and Plaintiff did not sufficiently explain when and how he obtained this copy of the grievance. Again, Plaintiff

allegedly obtained a copy of this grievance, initialed the line for an appeal to the Warden on November 8, 2018 (outside the five-day period for such an appeal), but did not sign and date the line asserting that he was appealing notwithstanding the lack of an initial response.  There is no evidence that this grievance was ever received by the Warden.  Thus, this grievance was not properly exhausted.  Furthermore, Plaintiff has not offered any evidence to indicate whether he inquired about the status of this grievance during the period permitted for proper exhaustion.  Thus, he has not demonstrated that the grievance process was unavailable to him with respect to this grievance.

The third grievance offered by Plaintiff is dated November 11, 2018.  (ECF No. 75, Ex. 1 at 7).  This grievance, which contains no grievance number, claims that Plaintiff had blood in his stool and passed out in his cell on November 10, 2018.  He claims that he should have been immediately returned to CAMC for his surgical procedures in accordance with his discharge instructions.  He claims he overheard medical staff stating that they hoped he died this time.  He says this was deliberate indifference to his serious medical needs and he wanted proper medical attention.

This grievance contains no responses.  Plaintiff did not sufficiently explain when and how he obtained a copy of this grievance but, again, he allegedly initialed it on the line for an appeal to the warden on November 8, 2018 (outside the five-day period for requesting an appeal), but he failed to sign and date the line requesting an appeal notwithstanding the lack of a response at the initial level. There is no evidence that this grievance was ever received by the Warden.  Thus, this grievance was not properly exhausted.  Furthermore, Plaintiff has not offered any evidence to indicate that he inquired about the status of this grievance during the period permitted for proper

exhaustion. Thus, he has not demonstrated that the grievance process was unavailable to him with respect to this grievance.

The next grievance offered by Plaintiff is dated November 19, 2018. (ECF No. 75, Ex. 1 at 10). This grievance, which has no log number, claims that Plaintiff had sent numerous grievances to Unit Manager (UM) Best (Bess), but had not received any responses. He further asserts that he used his copies to send appeals, but the grievances were never given any log numbers and he was not given copies thereof. Plaintiff further claims he was told that he could not appeal a grievance that did not have a log number or a response.[4] He further claims that Bess was trying to "keep him out of court." This grievance was allegedly prepared before the instant complaint was filed. There are no responses to this grievance at any level, but Plaintiff allegedly initialed the lines for an appeal to both the Warden and to the Commissioner on December 4, 2018 (beyond the five-day period for seeking an appeal), but did not sign and date the lines for attempting to appeal without an initial response.

Plaintiff also offers another grievance dated July 2, 2019, which appears to address the bulk of his claims concerning his medical and mental health treatment and asserts that he had not gotten responses to previous grievances. That grievance, which was rejected as untimely and for having excessive pages, is insufficient to exhaust the grievance process. However, Plaintiff filed his initial complaint concerning on December 7, 2018, so he would have had to exhaust the issues concerning his medical and mental health treatment before that date. Therefore, any grievances concerning those issues that

---

[4] The undersigned notes that the rejected grievance appeal upon which Plaintiff relies does not concern the issues that are the subject of the amended complaint. (ECF No. 107 at 12).

were submitted after that date were not timely exhausted and will not be considered by the court.

Additionally, although the claims against defendants Hayhurst and Lilly were added in the amended complaint, which was sought on November 20, 2019, no grievances concerning the alleged assault and retaliation by Hayhurst and Lilly on September 20, 2019 were timely exhausted prior to such amendment. Rather, Plaintiff has only offered a grievance dated October 25, 2019 that, although difficult to read, appears to assert that he had previously submitted a grievance on October 10, 2019 complaining about the alleged use of force by Hayhurst and Lilly, which had gone unanswered. However, Plaintiff's alleged submission, on October 10, 2019, of a grievance concerning Hayhurst and Lilly's conduct already fell outside the 15-day period he had to timely file such a grievance following the incident. Thus, his earlier alleged grievance would not have properly exhausted that claim anyway.

Plaintiff also offers the affidavits of three other inmates making general accusations of obstruction of the grievance process by staff at MOCC. (ECF No. 75, Ex. 1 at 1-7). However, those affidavits offer no personal knowledge with respect to how Plaintiff's grievances were handled.

With respect to the evidence of record concerning Plaintiff's attempts to exhaust his administrative remedies, the undersigned proposes that the presiding District Judge **FIND** that there is no credible evidence to support a finding that Plaintiff timely and properly exhausted the available administrative remedies, or that the grievance process was actually unavailable to him. Because Plaintiff failed to properly exhaust his administrative remedies concerning any of his remaining claims for relief, this court cannot review the merits thereof, and all claims must be dismissed as a matter of law.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendants have established that Plaintiff failed to properly and fully exhaust the available administrative remedies concerning all of the remaining claims against Defendants, and that the amended complaint must be dismissed pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' motions for summary judgment (ECF Nos. 69, 71, 85, 100, and 105), **DENY** Plaintiff's motion for summary judgment (ECF No. 109), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985)*; United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

January 22, 2021

Dwane L. Tinsley
United States Magistrate Judge