```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

RONALD L. COSNER,

       Plaintiff,

v.                               Civil Action No. 2:18-cv-01499

DR. THISTLETHWAIT, JOSHUA SHEWSBERRY,
SANDRA MAY, DR. LYE, U.M. BESS,
L.P.N. AMANDA JONES, DR. RITZ,
TIM CARPER, OFFICER DYLAN HAYHURST,
and OFFICER DEVIN LILLY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are motions for summary judgment filed by defendant U.M. Bess (ECF No. 69), defendants Dr. Lye, Sandra May, Joshua Shrewsbery (ECF Nos. 71, 85), defendant Dr. Ritz (ECF No. 100), and defendants Dylan Hayhurst and Devin Lilly (ECF No. 105).  Defendants Tim Carper and Dr. Thistlethwaite joined by motion the motions by Lye, Sandra May, and Joshua Shrewsbery (ECF No. 85) and of Ritz (ECF No. 100).  ECF No. 104.[1]

---

[1] Earlier dismissed from the case are defendants Wexford Health Sources, Inc., PSIMED, Inc., and Mount Olive Correctional Center.  ECF Nos. 39, 110.  It appears L.P.N. Amanda Jones was never served.

## I. Procedural History

The plaintiff, proceeding pro se, filed his initial complaint on December 7, 2018. ECF No. 2. On November 20, 2019 he filed a letter-form motion to amend his complaint, with an attached amended complaint. ECF No. 25. He also filed leave to file a second amended complaint on December 30, 2019. ECF No. 41. On July 8, 2020, the Magistrate Judge granted leave to file the first amended complaint in part and denied it in part. ECF No. 82. The Magistrate Judge also denied leave to file a proposed second amended complaint as futile. Id.

The plaintiff, an inmate at Mount Olive Correctional Complex (MOCC), brings a number of claims against the ten remaining defendants. In his amended complaint, plaintiff alleges that he has an "extensive history of self-harm, depression, suicidal idolations [sic] with numerous suicide attempts." Plaintiff alleges that, in August of 2018, he was taken off his seizure and depression medications and was denied mental health treatment as punishment by psychiatrist Dr. Thistlethwaite ("Thistlethwaite") and mental health counselor Tim Carper ("Carper"), for an argument he had with Thistlethwaite and for making wine in his cell.

Plaintiff alleges that on October 10, 2018, he ingested two straightened paper clips. Plaintiff reported his

2

actions to defendant L.P.N. Amanda Jones ("Jones"), who contacted the on-call medical provider and an x-ray was ordered, which plaintiff allegedly refused. Plaintiff contends that these medical providers did not contact the mental health staff to ensure that appropriate suicide precautions were instituted. The amended complaint further alleges that, several days later, plaintiff vomited up one of the paper clips and inserted pieces of it into his urethra. He claims that, had he been placed on suicide watch, he would have been unable to engage in such self-harm.

On or around October 16, 2018, plaintiff received x-rays and was sent to the Charleston Area Medical Center ("CAMC") Emergency Room ("ER"), where he was treated and released with instructions to follow-up with a gastroenterologist and a urologist for potential surgery to remove the foreign objects. Plaintiff contends that the CAMC doctor(s) directed that his follow-up visits occur within two days. He further contends that the instructions directed that he be returned to the ER if he suffered abnormal vital signs, fever, vomiting, or rectal bleeding.

Plaintiff alleges that, following his return to MOCC, defendants Dr. Lye ("Lye"), Sandra May ("May"), and Josh Shrewsberry ("Shrewsberry") were informed of the discharge

instructions and failed to ensure that he received his follow-up appointments and surgery for over two months.  Plaintiff further alleges that, approximately one week after his return from CAMC, Shrewsberry contacted defendant Dr. Ritz ("Ritz"), the regional medical director for defendant Wexford Health Sources, Inc., to approve his offsite treatment and surgery, but Ritz "did nothing to speed up the surgeries as was needed."

According to the amended complaint, on or about November 11, 2018, plaintiff passed out in his cell and hit his head, while hemorrhaging large amounts of blood.  Shrewsberry was contacted, but no medical treatment was ordered, and plaintiff was not returned to the ER at that time.  Ultimately, plaintiff had urological surgery to remove the paper clip from his urethra on or about November 20, 2018.

Plaintiff subsequently attempted to mail a complaint about alleged violations of the Americans with Disabilities Act to the United States Department of Justice.  However, his mail was returned as undeliverable.  The amended complaint alleges that, on or about September 20, 2019, defendants Dylan Hayhurst ("Hayhurst") and Devin Lilly ("Lilly"), correctional officers at MOCC, brought the undelivered mail to plaintiff's cell, where he was on suicide watch, and asked him to sign for the opened mail. Plaintiff further alleges that, as he sat on his cot and

attempted to examine the mail, Lilly threw a pen back into his cell.  Then, Hayhurst allegedly deployed a Taser against plaintiff, while stating "go ahead and file some more complaints."  Plaintiff further alleges that these officers lied about their conduct in incident and disciplinary reports, which resulted in plaintiff's punishment for a rules violation.

Plaintiff alleges broadly that defendants' conduct violated his rights under the Eighth and Fourteenth Amendments and constituted intentional infliction of emotional distress and negligence under state law.  Plaintiff further contends that Defendants Hayhurst and Lilly committed assault and battery under state law.  Each defendant (collectively "Defendants") moved for summary judgment, asserting that they are entitled to judgment as a matter of law on all of plaintiff's claims because he failed to exhaust the available administrative remedies prior to filing his complaints.  ECF Nos. 69, 71, 85, 100, 105.[2]  Plaintiff opposed each motion and filed his own motion for summary judgment, ECF No. 109, contending that his unit managers caused his administrative grievances to "disappear" without logging them and ensuring their proper submission for response and appeal in a timely manner in order to prohibit exhaustion.

---

[2] Defendants Carper and Thistlethwaite joined defendants Lye, May, and Shrewsberry's motion for summary judgment.  ECF No. 104.

5

Thus, plaintiff contends that the exhaustion process was unavailable and that he should be able to pursue his claims despite non-exhaustion.

The Magistrate Judge held a hearing on August 4, 2020, during which the court heard argument concerning the parties' positions on the exhaustion issue and addressed the evidence of record.

On January 22, 2021, the Magistrate Judge entered a PF&R recommending that the court grant the motions for summary judgment filed by defendants, deny plaintiff's motion for summary judgment, and dismiss the civil action from the docket of the court. Plaintiff filed objections to the PF&R on March 10, 2021. ECF No. 119.

## II. Standard of Review

Upon an objection, the court reviews a PF&R de novo. Specifically, "[t]he Federal Magistrates Act requires a district court to 'make a de novo determination <u>of those portions</u> of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (first alteration added) (quoting 28 U.S.C. § 636(b)(1)).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

III. Discussion

Plaintiff raises five objections.  First, he claims that summary judgment is premature as he has not had the opportunity to conduct discovery as to the issue of whether his administrative remedies have been exhausted.  Second, he contends that the Magistrate Judge mischaracterized several relevant facts in the PF&R.  Third, he claims that the evidence he has presented is sufficient to survive summary judgment.  Fourth, he objects that the Magistrate Judge misapplied relevant precedent.  Fifth, he objects to the Magistrate Judge's finding that the amended complaint fails to state a claim against Unit Manager Bess (U.M. Bess).

Plaintiff's first two objections are principally concerned with his contention that his Unit Managers caused several of his grievance forms to disappear without logging or addressing them, thus making the administrative remedies unavailable to him, and excusing him from his failure to appeal those grievances to the Warden and Commissioner.

The court notes at the outset that plaintiff does not directly object to the Magistrate Judge's finding that defendants have made a threshold showing of failure to exhaust, thus shifting the burden to plaintiff to show that

administrative remedies were indeed unavailable. See Creel v. Hudson, 2017 WL 4004579, at *4 (S.D.W. Va. Sept. 12, 2017).

The West Virginia Division of Corrections and Rehabilitation ("WVDCR") has instituted uniform procedures for filing an inmate grievance, which are found in Policy Directive 335.00. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." Miller v. Rubenstein, 2018 WL 736044, at *5 (S.D.W. Va. Feb. 6, 2018) (citing Policy Directive 335.00(V)(D)(4)).

The procedure for filing an inmate grievance is as follows: An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit manager is required to return an answer to the grievance to the inmate within five days. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review.

Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery [or non-delivery] of the response." "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Finally, if the Warden's response is unsatisfactory, or if the Warden does not respond within five days, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the Warden's response or non-response. The Commissioner is allotted ten days to respond to the appeal. Id. (quoting Policy Directive 335.00). Policy Directive 335.00 specifically states that, "'[e]xhaustion' shall mean submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner. Rejections do not constitute exhaustion," where a rejection is defined as "a refusal to review a grievance on the merits due to a failure of the inmate to follow the procedural requirements for filing such grievance." The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." Id. (quoting Policy Directive 335.00(V)(A)(5)).

Plaintiff has not attempted to appeal any of the relevant grievances consistent with the above outlined policy of Mount Olive Correctional Center (MOCC).  Therefore, plaintiff bears the burden of demonstrating that the administrative remedies were unavailable to him.  The issue of exhaustion of administrative remedies under the PLRA "is a question of law to be determined by the judge."  Creel, 2017 WL 4004579, at *4.

Plaintiff first contends that he is entitled to discovery of certain evidence which he believes will demonstrate that his Unit Managers thwarted him from utilizing the applicable administrative remedies either by not assigning them grievance numbers or by destroying them outright.  He contends that summary judgment is premature until he is able to get certain pieces of evidence, including the MOCC grievance logs, showing which grievances were logged but destroyed, legal mail logs, which he states will show that legal mail frequently does not reach its destination or disappears regularly, incident reports and use of force reports, showing that Hayhurst and Lilly used fear and intimidation to prevent plaintiff from filing grievances, MOCC housing logs to identify witnesses who may have seen plaintiff hand UM Bess and Bragg grievances while he was in the infirmary, video camera footage he contends will show Bess and Bragg being handed the grievance forms, and a list

of every inmate bringing § 1983 suits in which they allege that officials at MOCC destroyed or caused to disappear properly tendered grievances in an attempt to render prisoners to be out of compliance with PLRA.[3]

Even if plaintiff were able to prove with the benefit of discovery that Unit Managers were destroying his grievance forms, as he alleges, he would still fall short of demonstrating unavailability of the administrative remedy, since he has not demonstrated, or even alleged, that he attempted to appeal the Unit Managers' non-decisions to the Warden or Commissioner in a timely fashion. See Reynolds v. Doe, 431 F. App'x 221 (4th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise")).

As the Magistrate Judge explained, the failure by a Unit Manager to respond to a grievance is considered an appealable rejection, and despite plaintiff producing several grievance forms, only one of the forms that makes allegations

---

[3] The court notes that the only discovery plaintiff sought in his combined discovery requests relevant to the exhaustion issue was "[g]rievance logs of any and all filed grievances at M.O.C.C. from 2016 to present." ECF No. 73 at 3. That request was denied by the Magistrate Judge following his January 22, 2021 PF&R. ECF No. 117.

related to the present case, the form dated July 2, 2019, which is nearly seven months after his filing the initial complaint, evidences an attempt to appeal a rejection by the Unit Manager to either the Warden or the Commissioner. The other grievance forms plaintiff produced which make allegations that relate to this case contain no indication that they were ever before the Warden or the Commissioner, or that plaintiff attempted to get these forms before them.

Plaintiff states in his objections that "when trying to file an appeal to the Warden on an unlogged copy, I was told by the Warden you cannot appeal a grievance that has not been logged," and thus the alleged failure of the Unit Managers to log his grievance made appealing to the Warden unavailable.[4] Even if plaintiff is correct that the Warden or the Commissioner were unlikely to grant relief because he only had copies of unlogged grievances, plaintiff still had an obligation under the Policy Directive to exhaust those procedures.

---

[4] Plaintiff indicates he provided the Magistrate Judge with "proof of the Warden's response," which appears to be referring to a grievance dated July 11, 2019, well after he allegedly submitted the grievances underlying the complaint, in which he complains of issues unrelated to this case. ECF No. 107 at 12. That form appears to have a sticky note attached to it stating that "you cannot appeal something that has not been answered," and is initialed "OA" with the date 8-1. Id.

Plaintiff also has not explained why he did not file a grievance mentioning his concerns that the Unit Managers were destroying his grievances until November 19, 2018. In his objections, plaintiff asserts that the reason he has copies of several allegedly submitted grievances which he has produced as evidence is that once earlier grievances had gone missing, he had the officer on duty copy his grievances before turning them into the Unit Manager, as proof that he had turned those grievances in, beginning as early as August 31, 2018. It is entirely unclear why plaintiff failed to report the Unit Managers for at least two and a half months after believing they were destroying his grievances.

Moreover, plaintiff's assertion that he was thwarted in his attempt to file grievances is also belied by the fact that he successfully filed a number of grievances during the same time period. Plaintiff filed a grievance on October 24, 2018, pertaining to his being taken off his depression medication, addressed to Wexford Health's Health Services Administrator Pamela Givens, which was logged, marked as accepted, and addressed with the statement, "Mr. Cosner, be advised that your chart is scheduled to be reviewed by the regional medical director for mental health." ECF No. 85-2. Plaintiff failed to appeal that grievance to the Warden or the

14

Commissioner. Id. Further evidence that appeals channels were available to plaintiff is a grievance form plaintiff appealed to the Commissioner in July 2019, which was rejected by the Commissioner as untimely and for having excessive pages. ECF No. 107 at 13. He also filed an unrelated grievance in July of 2019, that he alleges was returned to him from the Warden. ECF No. 107 at 12.

As to the alleged force and intimidation by Hayhurst and Lilly, plaintiff contends that a normal prisoner would not have continued to pursue grievances against these defendants. However, plaintiff does not allege or argue that he was actually intimidated, such that he could not avail himself of the grievance process. In fact, plaintiff alleges in his amended complaint that he submitted and "resubmitted a grievance about the excessive use of force." ECF No. 83 at 8.[5] The mere allegation that plaintiff was subject to excessive force is insufficient to exempt him from the exhaustion requirement. See Porter v. Nussle, 534 U.S. 516, 532 (2002) (PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular

---

[5] The grievance he attached as evidence, though, is untimely, as it is dated October 25, 2019, and asserts that plaintiff submitted a prior unanswered grievance on October 10, 2019, also untimely, complaining of the use of force by Hayhurst and Lilly.

episodes, and whether they allege excessive force or some other wrong.").

Plaintiff's second objection purports to object to the lack of evidentiary support for the Magistrate Judge's findings and recommendations and stating that an evidentiary hearing is required to supplement the record. Plaintiff mostly supports this objection with arguments that are without merit and already considered supra, including that the Magistrate Judge failed to consider the copies of his unlogged grievance forms, that the Magistrate Judge should not have considered the October 24, 2018 grievance to Wexford Health Sources inasmuch as it is "fabricated," and that the Magistrate Judge failed to consider that plaintiff had made copies of his grievances before submitting them to the Unit Manager.

Plaintiff's argument concerning fabrication of the October 24, 2018 grievance is without merit. Plaintiff takes issue with a handwritten mark on the grievance form noting that the grievance was "received 11-1-19," which he contends is well after his submission in October 2018. The origin of the marking is unclear; however, plaintiff concedes that he submitted the grievance. ECF No. 119 at 8. That marking was of no import to the Magistrate Judge's decision and the plaintiff does not appear to contest the authenticity of the grievance itself.

Lastly, in both the first and second objection, plaintiff objects to the Magistrate Judge's utilization of what plaintiff contends is the Policy Directive 335.00 effective in 2020, rather than the relevant time period of 2018 and 2019. He contends that summary judgment is inappropriate until he receives the earlier in time policy directive, which he contends provides him with "mitigating factors" in the administrative review process. Plaintiff appears to be in error in this regard. The Magistrate Judge utilized a policy directive with an effective date of February 1, 2014, which Defendant Bess produced in relation to his motion for summary judgment. ECF No. 69-1.

Plaintiff's third objection is that the evidence, viewed in a light most favorable to him is enough to overcome summary judgment. Inasmuch as plaintiff does not elaborate on this argument, and for foregoing reasons, the objection is overruled.

Plaintiff's fourth objection purports to object that the Magistrate Judge improperly applied binding precedent, failed to consider relevant evidence, and lacked additional evidence, which he contends would show that he had exhausted the administrative remedies available to him. This objection appears more specifically to address why his grievance to the

Commissioner, dated July 17, 2019, should be considered a proper exhaustion of administrative remedies, despite the Commissioner finding it was untimely and exceeded the maximum page length. He indicates that it was late because he needed to get the grievance notarized inasmuch as the other appeals he sent the Commissioner had disappeared. He further contends that it exceeded the length maximum, which is that space available on the form, because he could not explain his grievance more briefly.

The July 17, 2019 grievance referenced by plaintiff describes events which occurred between August and December 2018. Even if plaintiff needed to have the grievance notarized, he has not demonstrated the need to take seven months to do so, particularly given that the Policy Directive only allows for 15 days to file from the event giving rise to the grievance. Moreover, the court is not persuaded that the appeal to the Commissioner could not have been done more briefly, within the space provided on the form. It certainly cannot be said that the timing and length requirements are so onerous as to make the appeal unavailable to plaintiff.

Plaintiff's fifth objection takes issue with the Magistrate Judge's finding that plaintiff's amended complaint failed to state a claim against defendant Bess under § 1983 for

deliberate indifference by destroying his grievance forms. The Magistrate Judge found in his July 8, 2020 order denying in part plaintiff's motion to amend the complaint that plaintiff's amended complaint failed to state a claim for violation of his Constitutional rights against Bess for interfering with the grievance process, inasmuch as plaintiff lacked a Constitutional right to participate in the grievance process. ECF No. 82 at 4-5. That order denied plaintiff's motion to amend with respect to Bess. Id. at 6. Plaintiff objected to that finding on August 14, 2020.[6] ECF No. 96.

Plaintiff's objection is non-responsive to the Magistrate Judge's reasoning, as it largely restates the content of the claim itself. The Magistrate Judge's reasoning is well-supported and plaintiff fails to state a claim for violation of his due process or Eighth Amendment rights. AshannRa v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983"); see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[N]o constitutional right to participate in grievance proceedings.").

---

[6] The court granted plaintiff's motion for an extension of time to respond on July 28, 2020. ECF No. 90.

## IV. Conclusion

Accordingly, it is ORDERED that:

1. Plaintiff's objections to the PF&R be, and they hereby are, overruled;

2. The findings made in the PF&R of the Magistrate Judge be, and they hereby are, adopted by the court and incorporated herein;

3. Defendants' motions for summary judgment be, and they hereby are, granted.

4. Plaintiff's motion for summary judgment be, and it hereby is, denied;

5. That this case be dismissed with prejudice and removed from the docket of the court.

The Clerk is directed to forward copies of this written opinion and order to plaintiff, all counsel of record, and the United States Magistrate Judge.

ENTER: August 12, 2021

John T. Copenhaver, Jr.
Senior United States District Judge